1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHILLIP W. SIMON,<br><br>                                   Plaintiff,<br><br>v.<br><br>SUPERIOR COURT OF CALIFORNIA,<br>COUNTY OF SAN DIEGO<br><br>                                   Defendant. | Case No.:  3:23-cv-00889-RBM-AHG<br><br>**ORDER GRANTING DEFENDANT<br>SUPERIOR COURT OF<br>CALIFORNIA MOTION TO<br>DISMISS PLAINTIFF'S<br>COMPLAINT WITH PREJUDICE**<br><br><br>**[Docs. 1, 5]** |

This case relates to Plaintiff Phillip W. Simon's ("Plaintiff") ongoing marital dissolution proceeding in the Superior Court of California, County of San Diego.  Pending before the Court is Defendant Superior Court of California, County of San Diego's ("Superior Court")[1] motion to dismiss Plaintiff's complaint with prejudice ("Motion"). (Doc. 5.)  Plaintiff filed an opposition to the Superior Court's Motion ("Opposition"). (Doc. 9.)  The Superior Court filed a reply brief ("Reply").  (Doc. 13.)  Plaintiff filed a sur-

---

[1] Defendant was erroneously sued as Superior Court of California, County of San Diego, North County Family Division.  (Doc. 11 at 1 n.1.)

1

reply.  (Doc. 14.)  The Court **STRIKES** the sur-reply for failure to obtain leave of the Court pursuant to The Honorable Ruth Bermudez Montenegro's Civil Chamber Rules, Rule III.D.[2]

Plaintiff filed a motion under Federal Rule of Civil Procedure Rule 60(d)(3) "for Fraud (Intrinsic) on the Court for an order vacating the [Domestic Violence Restraining Order ("DVRO")] against him entered on October 1, 2021," (Doc. 1 at 2),[3] and attached various exhibits.

In the motion, Plaintiff argues that the Court can vacate the Superior Court's DVRO for fraud on the court under Rule 60(d)(3).  (*Id.* at 10–13.)  Specifically, he argues (1) the Superior Court committed fraud on the court by refusing to allow Plaintiff his right to be heard, ignoring his documents and proof, making false statements, and refusing to make proper orders pursuant to family and federal laws and codes; (2) Nora Watts Simon, through her two attorneys, as well as Sharon Jackson and Dallas Thomas,[4] committed fraud on the court by intentionally and knowingly giving false testimony to the Superior Court; (3) joined party Lynnetta Watts,[5] through her attorney, committed fraud on the court by giving knowingly false and misleading information to the Superior Court to intentionally influence the Superior Court to make false and misleading rulings; and (4) Plaintiff's three former attorneys committed fraud on the court by intentionally failing to provide Plaintiff proper representation and failing to provide the Superior Court with valid documents provided to them by Plaintiff.  (*Id.* at 10–11.)  On the last point, Plaintiff specifically alleges

---

[2] Even if the Court had considered Plaintiff's sur-reply, it would not alter the Court's decision on Defendant's Motion.

[3] The Court cites the CM/ECF pagination unless otherwise noted.

[4] Throughout Plaintiff's motion, he refers to both "Dallas" Thomas and "Dallos" Thomas. (*See* Doc. 1.)  It appears these references are to the same individual.  For ease of reference, the Court shall refer to this individual as Dallas Thomas.

[5] It is unclear to the Court what relation Lynnetta Watts has to Plaintiff or Nora Watts Simon, if any, beyond purchasing the subject property with Plaintiff and having an ownership interest in that property.  (*See* Doc. 1; Doc. 1-5; Doc. 1-9.)

his attorneys "failed to provide [the Superior Court] with proof of Plaintiff's innocen[ce] in the DVRO case and advised him to join a third party to the case that harmed the case for more than 2 years." (*Id.* at 11.)  Additionally, Plaintiff contends that the Superior Court "refus[es] to make any such orders or determination that the real property is not community property" and his "VA disability benefits are not an asset which can be divided as marital or community property." (*Id.* at 12–13.)  Plaintiff requests that this Court change the venue of the state court action to another state court in Riverside County because he will not receive a fair ruling from the Superior Court in San Diego County. (*Id.* at 13–14.)

In the Superior Court's Motion, it argues: (1) Plaintiff's motion fails to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 8 and 12(b)(6); (2) the Court lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine; (3) the Court lacks subject matter jurisdiction under the *Younger* abstention doctrine; (4) the claims against the Superior Court are barred by Eleventh Amendment immunity; (5) the claims are barred by the doctrine of quasi-judicial immunity; and (6) the Court lacks subject matter jurisdiction under the Anti-Injunction Act. (Doc. 5-1 at 12–19.)

The Court finds this matter suitable for determination without oral argument pursuant to Civil Local Rule 7.1(d)(1).  For the reasons discussed below, the Superior Court's Motion is **<u>GRANTED WITH PREJUDICE</u>**.

## I.   BACKGROUND

Plaintiff's statement of facts in his motion alleges as follows.[6]

### A. DVRO Decision and Appeals

Plaintiff asserts that, on October 1, 2021, the Superior Court "granted an improper and false DVRO against Plaintiff … for the protection of Nora Watts Simon (Petitioner in

---

[6] The Court's summary of Plaintiff's allegations reflects Plaintiff's factual and legal allegations, not conclusions of fact or law by this Court.

the family law case)."[7]  (Doc. 1 at 4.)  The Superior Court granted the DVRO "based on false and unsupported testimony by Nora and a third party known as Dallas Thomas."  (*Id.*)  The Superior Court denied Plaintiff's attorneys' formal request for reconsideration/to set aside the false DVRO because the hearing date was past the 75 days required by statute to hear it.  (*Id.*)  Plaintiff found no such 75-day-statute and it is "important to note that it was at no fault of [Plaintiff] or his attorneys that the above said matter was not heard within 75 days, but instead merely the fault of [the Superior Court's] calendaring."  (*Id.* at 4–5.)  Plaintiff filed a request for an order ("RFO") on March 20, 2023, with a hearing date set 140 days out, and an *ex parte* application three days later requesting a sooner hearing date, which was opposed by opposing counsel "giving false and misleading statements."  (*Id.* at 5.)  The Superior Court denied the reasonable request and in doing so, abused its discretion.  (*Id.*)  The Superior Court "intentionally ignored" the 75-day statute alleged by a prior judge "and did not abide by any other statue as known by 'Every California Judge,' who should be familiar with the requirements to issue a decision under a Constitutional provision such as Article VI, Section 19."  (*Id.*)  The Superior Court "abused [its] power by not allowing [Plaintiff's] RFO to be heard at all when [the Superior Court] denied his ex parte request."  (*Id.*)

**B. DVRO Proceeding and Procedure**

Plaintiff alleges the DVRO was granted in part after the false testimony of Thomas.  (*Id.*)  On July 12, 2021, "[Thomas] falsely stated that she spoke to [Plaintiff] for hours whereas she claims he attempted to get her to jump on Nora and fight her.  [Plaintiff] has proof of the phone logs that reflect the actual phone call was 7 minutes, not hours as claimed."  (*Id.*)  Plaintiff did not make any such demands of Thomas.  (*Id.*)

On July 25, 2021, Watts Simon physically assaulted Plaintiff's mother.  (*Id.* at 6.)  Plaintiff sent photos of his beaten mother to Thomas because he thought they were close.

---

[7] The Superior Court of California, County of San Diego case is *Simon Watts v. Simon*, Case No. 21FL004274N (2021).  (*Id.* at 4.)

(*Id.*)  Plaintiff did not know Watts Simon and Thomas were conspiring against him to make up a false story that he wanted Thomas to harm Watts Simon.  (*Id.*)  They conspired to gain an advantage in a family case for custody of Plaintiff and Watts Simons' children and to force Plaintiff out of his home.  (*Id.*)

On July 26, 2021, Plaintiff texted Thomas explaining his mother's version of the assault.  (*Id.*)  The Superior Court made an incorrect statement that there was another text from Plaintiff to Thomas suggesting conspiracy for solicitation, but no such text message exists or was presented to the Superior Court.  (*Id.*)  There was an Instagram message from Thomas to Watts Simon falsely stating Thomas' "conspiracy theory," but no conversations between Plaintiff and Thomas suggesting a request to harm Watts Simon.  (*Id.*)

During the DVRO hearing, Plaintiff "was denied his rights to defend himself by his attorneys and was not allowed to present his evidence or witnesses, while another third party known as [Jackson] was allowed to."  (*Id.*)  Jackson is related to Watts Simon and conspired with her and Thomas to falsely testify against Plaintiff.  (*Id.*)  Transcripts of the hearing reflect how opposing counsel knowingly confused the Superior Court with a "chain of false evidence."  (*Id.*)  Plaintiff's own attorney added to the negligence of the Superior Court by "mis-handling the evidence provided to them" by Plaintiff, which confused the Superior Court and led to the false DVRO.  (*Id.*)

The Superior Court "failed to handle, understand and interpret the true evidence in the case and ignored [Plaintiff's] Objection to the Statement of Decision, which was raised by [Plaintiff] and his attorneys of record at the time."  (*Id.*)  The Superior Court "failed to fairly evaluate the creditability of the witnesses; failed to consider [Plaintiff's] timely evidence, arguments and all his pertinent pleadings as provided to [the Superior Court]." (*Id.* at 7.)  The Superior Court granted a "criminal DVRO" against Plaintiff, when no other such DVRO exists in the family courts of California.  (*Id.* at 6.)  Transcripts from October 1, 2021 identify how "[the Superior Court] made the improper Order of the DVRO against [Plaintiff]."  (*Id.*)  On December 12, 2021, the proposed statement of decision was received with errors, and it became known to Plaintiff that his attorney did not file the objections to

5

the statement of decision.  (*Id.* at 7.)  The Superior Court claimed the statement of decision was filed and concluded as much in granting the DVRO against Plaintiff.  (*Id.*)

Over a year since the granting of the false DVRO, there has been no harm or threats of violence against Watts Simon, who has lived in the same home as Plaintiff during this time.  (*Id.*)  Plaintiff has no past or present history of domestic violence against Watts Simon or anyone else, but Plaintiff does have an active restraining order against Watts Simon for physically assaulting Plaintiff's mother, which Watts Simon has violated on several occasions.  (*Id.*)

**C. Change of Venue**

Plaintiff "move[s] this court to change Venue from the San Diego Superior Court to the Riverside Superior Court on the grounds that the Superior Court intentionally refuses to make any such fair rulings as he has requested over and over in the last 2 years and on the fact that the Superior Court has intentionally ignored Federal laws that govern and protect Plaintiff's veterans protected benefits."  (*Id.*)  "[The Superior Court] has displayed complete and [g]ross negligence and bias ruling against Plaintiff without any consideration for the law or his civil rights."  (*Id.*)

**D. Property Issue**

On September 9, 2021, Watts joined Plaintiff and Watts Simon's marital dissolution case, and on December 12, 2022, the Superior Court refused to un-adjoin Watts or determine whether the real property was a community asset.  (*Id.* at 9.)

The Superior Court denied Plaintiff's requests to resolve the property issue and the opposing parties are trying to drag the matter out to avoid the reality that the home needs to be sold.  (*Id.* at 8.)  Opposing parties cannot afford to own the property or buy out Plaintiff's share.  (*Id.*)  The Superior Court and opposing parties "assisted in this fraud (by denying every request made by Plaintiff).  This fraudulent practice has lasted for more than 2 years and has cost Plaintiff thousands of dollars."  (*Id.*)  The Superior Court "intentionally and fraudulently restricts the family case from moving forward and has displayed complete prejudice actions against Plaintiff, preventing any such fair and impartial rulings in the case

6

to prevail." (*Id.*)  The Superior Court refuses to grant an order to sell the home and to partition amounts each party should receive. (*Id.*)  Instead, the Superior Court just waits for a trial that will fail to produce any lawful and legal orders. (*Id.*)  Such trial is bound to fail because the Superior Court "refused to make any such orders for a professional to partition the divisions of the property and [the Superior Court] continues to allow an unrelated third party to remain in a divorce case." (*Id.*)  The Superior Court "should have made the proper ruling and allowed the civil court to handle the division of the property between the true owners of the property, which are 2 individuals who are not married to each other (a civil matter)." (*Id.* at 8–9.)

The Superior Court "intentionally ignores the Federal laws that govern and protects Plaintiff's veteran's benefits, which clearly defines that the real property is 'not community property.'" (*Id.* at 9.)  The Superior Court "denies every request from Plaintiff to make a characterization of the real property, but instead continues to allow the opposing parties to hold a veteran's benefits hostage and unavailable to him." (*Id.*)  On April 2, 2023, Plaintiff filed a public request for records from the court, after he was made aware of personal correspondence he had not seen, and the request was denied. (*Id.*)  "On April 18, 2023, the Appeals court denied Plaintiff's Writ of Mandate (DVRO issue), a complete denial of this veteran's constitutional rights." (*Id.*)  There were five mandatory settlement conferences in the state court case, and they've all failed due to opposing parties not wanting to finalize any issues and the Superior Court's assistance "in this plot by denying every request made by Plaintiff to resolve the property issue." (*Id.*)  The Superior Court's denials of Plaintiff's requests have resulted in excessive costs to all parties, emotional damage to them and their three minor children, and keeps a simple divorce proceeding in limbo. (*Id.*)

## II.   LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(1)

Rule 12(b)(1) allows a defendant to move to dismiss a complaint based on a lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "When subject matter jurisdiction is challenged under Federal Rule of Procedure 12(b)(1), the plaintiff has the burden of

7

proving jurisdiction in order to survive the motion." *Tosco Corp. v. Cmtys. for a Better Env.*, 236 F.3d 495, 499 (9th Cir. 2001), *overruled on other grounds by Hertz Corp. v. Friend*, 559 U.S. 77 (2010).  "A Rule 12(b)(1) jurisdictional attack may be facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) (citation omitted).  In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction.  By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

   B. <u>Federal Rule of Civil Procedure 12(b)(6)</u>

   Pursuant to Rule 12(b)(6), an action may be dismissed for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.   The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted).  For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

   However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Nor is the Court "required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss*

*v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotation marks omitted).

When a Rule 12(b)(6) motion is granted, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

### III.   DISCUSSION

Before proceeding to a discussion of the merits of the case, the Court must resolve whether it has subject matter jurisdiction. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102–03 (1998) ("For a court to pronounce upon the meaning or the constitutionality of a state or federal law when it has no jurisdiction to do so is, by very definition, for a court to act ultra vires."); *Johnson v. City of Grants Pass*, 72 F.4th 868, 881 (9th Cir. 2023) ("Federal courts must determine that they have jurisdiction before proceeding to the merits.") (quoting *Lance v. Coffman*, 549 U.S. 437, 439 (2007)).[8]

#### A. *Rooker-Feldman* Doctrine

The Superior Court argues Plaintiff's Motion is a de facto appeal from state court rulings concerning the DVRO and subject property that is barred by the *Rooker-Feldman* doctrine. (Doc. 5-1 at 13–15.)  Plaintiff responds that he is not asking the Court to second-guess a state court ruling because the Superior Court declines to make any ruling concerning the property issue or allow any other court or division to hear that issue, despite the Superior Court's not having jurisdiction over an unrelated third-party in the case. (Doc. 9 at 2.)  Plaintiff responds that the *Rooker-Feldman* doctrine violates the separation of

---

[8] The Court may proceed with the question of jurisdiction first because the questions of jurisdiction and substance are not intertwined in this case as the Superior Court raises a facial challenge. (*See* Doc. 5-1 at 13–15.)  *See Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) ("The relatively expansive standards of a 12(b)(1) motion are not appropriate for determining jurisdiction in a case … where issues of jurisdiction and substance are intertwined.  A court may not resolve genuinely disputed facts where 'the question of jurisdiction is dependent on the resolution of factual issues going to the merits.'") (quoting *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983)).

powers by allowing courts to make final decisions in their jurisdiction without the possibility of review by other courts, leads to inconsistent outcomes, and limits access to justice by restricting parties from appealing to higher courts. (*Id.* at 7.) The Superior Court responds that Plaintiff admits he is seeking de facto appeals of rulings in his family court action. (Doc. 13 at 3–4.) The Superior Court responds that the *Rooker-Feldman* doctrine is rooted in the separation of powers and preserves federalism. (*Id.* at 4–5.) And the Superior Court argues the *Rooker-Feldman* doctrine prevents inconsistent outcomes between state and federal courts and does not limit access to higher courts because the proper procedure is for Plaintiff to appeal to the state appellate court. (*Id.* at 5.)

"Under *Rooker–Feldman*, a federal district court does not have subject matter jurisdiction to hear a direct appeal from the final judgment of a state court. The United States Supreme Court is the only federal court with jurisdiction to hear such an appeal." *Noel v. Hall*, 341 F.3d 1148, 1154 (9th Cir. 2003). "In its routine application, the *Rooker–Feldman* doctrine is exceedingly easy. A party disappointed by a decision of a state court may seek reversal of that decision by appealing to a higher state court. A party disappointed by a decision of the highest state court in which a decision may be had may seek reversal of that decision by appealing to the United States Supreme Court. In neither case may the disappointed party appeal to a federal district court, even if a federal question is present or if there is diversity of citizenship between the parties." *Id.* "If a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision, *Rooker–Feldman* bars subject matter jurisdiction in federal district court. If, on the other hand, a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, *Rooker–Feldman* does not bar jurisdiction." *Id.* at 1164. Under *Rooker-Feldman*, "we must pay close attention to the *relief* sought by the federal-court plaintiff." *Bianchi v. Rylaarsdam*, 334 F.3d 895, 900 (9th Cir. 2003) (emphasis in original) (quoting *Kenmen Eng'g v. City of Union*, 314 F.3d 468, 476 (10th Cir. 2002)).

If the plaintiff's desired remedy is to undo a prior state court judgment against him,

it is barred by *Rooker-Feldman*. *Id.* However, *Rooker-Feldman* "applies only when the federal plaintiff both asserts as her injury legal error or errors by the state court *and* seeks as her remedy relief from the state court judgment." *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1140 (9th Cir. 2004) (emphasis in original).

"A federal district court dealing with a suit that is, in part, a forbidden de facto appeal from a judicial decision of a state court must refuse to hear the forbidden appeal. As part of that refusal, it must also refuse to decide any issue raised in the suit that is 'inextricably intertwined' with an issue resolved by the state court in its judicial decision." *Noel*, 341 F.3d at 1158. "[C]laims [are] inextricably intertwined where the relief requested in the federal action would effectively reverse the state court decision or void its ruling." *Cooper v. Ramos*, 704 F.3d 772, 779 (9th Cir. 2012) (internal quotation marks and citations omitted). However, "bringing an 'independent claim' that, though similar or even identical to issues aired in state court, was not the subject of a previous judgment by the state court" is not precluded. *Id.* at 778.

In Plaintiff's motion, he seeks to "vacate the DVRO against Plaintiff as this order was granted by means of fraud on the [Superior Court]" and argues the following parties committed such fraud: (1) the Superior Court by its process and ruling, (2) Watts Simon, through her attorneys, as well as Sharon Jackson and Dallas Thomas, by false testimony, (3) Watts, through her attorney, by providing the Superior Court false and misleading information and "[the Superior Court] allowed this fraud on the court," and (4) Plaintiff's three former attorneys by failing to provide proof of Plaintiff's innocence in the DVRO case and advising him to join Watts to the family law case. (Doc. 1 at 10–13.) Moreover, Plaintiff argues the Superior Court refuses to decide whether the subject property is community property, and he seeks to change the venue of the state court proceeding because he will not receive a fair ruling from the Superior Court. (*Id.* at 13–14.) The Court considers whether each of these claims is barred by the *Rooker-Feldman* doctrine below.

///

///

11

### a. DVRO Ruling and Proceeding

#### i. Forbidden De Facto Appeal

Plaintiff alleges the Superior Court committed legal error in granting the DVRO. (*See* Doc. 1 at 6, 10.)  Plaintiff also challenges the Superior Court's application of various rules and procedures in reaching its DVRO determination.  (*See id.* at 6, 10.)  Plaintiff seeks as a remedy this Court's vacating the Superior Court's DVRO.  (*See id.* at 1–2, 10.)  *See Bianchi*, 334 F.3d at 902 ("It is difficult to imagine what remedy the district court could award in this case that would not eviscerate the state court's judgment.").  Additionally, in his Opposition, Plaintiff states that he seeks "help from a high court" to "overrule an [i]mproper decision by the [Superior Court]," including the DVRO.  (Doc. 9 at 2.)  The Court concludes Plaintiff's challenge to the Superior Court's judgment on the DVRO asserts legal errors in that judgment and seeks as a remedy relief from that judgment.  *See Kougasian*, 359 F.3d at 1140; *Noel*, 341 F.3d at 1164; *see also Samuel v. Michaud*, 980 F. Supp. 1381, 1411 (D. Idaho 1996) ("The district court lacks subject matter jurisdiction either to conduct a direct review of state court judgment or to scrutinize the state court's application of various rules and procedures pertaining to the state case.") (citing *Allah v. Superior Ct. of State of Cal.*, 871 F.2d 887, 891 (9th Cir. 1989), *overruled on other grounds by Harmston v. City & Cnty. of San Francisco*, 627 F.3d 1273 (9th Cir. 2010)).  Thus, Plaintiff's assertion of legal error in the DVRO judgment is a forbidden de facto appeal barred by the *Rooker-Feldman* doctrine.

#### ii. Inextricably Intertwined

Because Plaintiff raises a forbidden de facto appeal in challenging the Superior Court's DVRO judgment based on legal error, the Court must now consider whether Plaintiff's allegations against witnesses in the DVRO hearing and his attorneys pertaining to the DVRO proceeding are inextricably intertwined with that forbidden de facto appeal. The Court recognizes that Plaintiff has stated in his Opposition that he only brought this matter "because of the fraud on the court and [the Superior Court's] refusal to grant any and all request[s] to cure the defects committed."  (Doc. 9 at 3.)  However, that statement

does not relieve this Court of its obligation to determine whether any claim asserted by Plaintiff that does not challenge a state court judgment is inextricably intertwined with the forbidden de facto appeal.

In *Kougasian*, the plaintiff filed a federal diversity action against a defendant corporation, its sole shareholder, and the corporation's insurer. 359 F.3d at 1138–39. The plaintiff alleged, *inter alia*, that the district court should set aside two state court judgments because the defendants obtained those judgments through extrinsic fraud on the state court. *Id.* at 1139. Before reaching the merits, the Ninth Circuit explained that *Rooker-Feldman* only applies "when the federal plaintiff both asserts as her injury legal errors or errors by the state court *and* seeks as her remedy relief from the state court judgment." *Id.* at 1140. The *Kougasian* court held that a plaintiff alleging extrinsic fraud is not alleging a legal error by the state court, but a wrongful act by the adverse party, and thus, the *Rooker-Feldman* doctrine did not bar jurisdiction. *See id.* at 1140–41.

Subsequently, in *Cooper*, the Ninth Circuit concluded that the plaintiff's first claim raising a constitutional challenge to the state court's denial of his California Penal Code § 1405 post-conviction DNA testing motion was a challenge to the state court judgment in his case barred by the *Rooker-Feldman* doctrine. *See* 704 F.3d at 777–81. The *Cooper* court then considered whether the plaintiff's second claim that two public officials conspired to deny him a fair § 1405 proceeding was inextricably intertwined with that forbidden de facto appeal. *See id.* at 781–82. The plaintiff argued the two public officials obtained an expert declaration submitted by one of the officials that contained false and misleading statements. *Id.* at 782. The Ninth Circuit explained that the state court's decision to deny the § 1405 testing was "directly tied" to its decision to credit the public official's declaration and its determination that there was no evidence of tampering with or planting evidence. *Id.* The Ninth Circuit held such a claim was inextricably intertwined with the forbidden de facto appeal and noted "[t]he alleged conspiracy is a fig leaf for taking aim at the state court's own alleged errors." *Id.* The Ninth Circuit reasoned that the second claim "succeeds only to the extent that the state court wrongly decided the issues

before it" and "federal relief can only be predicated upon a conviction that the state court was wrong." *Id.* (quoting *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25 (1987)).

Here, the Court notes that, unlike in *Kougasian* and *Cooper*, Plaintiff is not suing opposing parties from the state court proceeding, despite alleging fraud on the court by both the Superior Court and opposing parties.  In any event, the Superior Court found Thomas' testimony and evidence credible in determining Watts Simon met her burden of proving by the preponderance of the evidence that Plaintiff engaged in abusive conduct warranting the DVRO.  (*See* Doc. 1-25 at 7–8, 10.)  That testimony appeared to corroborate Watts Simon's testimony concerning her belief that Plaintiff solicited Thomas to attack her.  (*See id.* at 8.)  Plaintiff alleged the same conspiracy and false testimony of Thomas and Watts Simon in his petition for writ of mandate to the Court of Appeal, Fourth Appellate District, Division One, which was denied.  (*See* Doc. 1-8 at 6–7; Doc. 1 at 9.)

Accordingly, as in *Cooper*, Plaintiff's allegations of Watts Simon and Thomas' false testimony are inextricably intertwined with the state court judgment on the DVRO.  *See Cooper*, 704 F.3d at 782.  The Superior Court's decision to grant the DVRO against Plaintiff was "directly tied" to its decision to credit Thomas and Watts Simon's testimony. *Id.*  The Court of Appeal then denied Plaintiff's petition for writ of mandate alleging the same conspiracy and false testimony between Thomas and Watts Simon alleged here. Thus, Plaintiff's claim was litigated and denied in the state proceeding.

However, Plaintiff has also alleged (1) Jackson committed fraud on the court through false testimony and (2) Plaintiff's attorneys committed fraud on the court by "fail[ing] to provide [the Superior Court] with proof of Plaintiff's innocen[ce] in the DVRO case." (Doc. 1 at 11.)  While the Superior Court rejected allegations from Plaintiff that Jackson engaged in acts of abuse toward him and found Jackson's testimony credible, (*see* Doc. 1-25 at 11), it is unclear if Plaintiff raised Jackson's alleged giving false testimony to the Superior Court.  Similarly, it appears Plaintiff did not raise, and the Superior Court thus did not address, the argument that Plaintiff's attorneys failed to provide proof of his innocence in the DVRO proceeding.  Though Plaintiff seeks as his remedy vacating the

DVRO, because these two claims are not based upon legal error of the state court nor does it appear they were considered by the Superior Court in granting the DVRO, they are not inextricably intertwined with the forbidden de facto appeal. *See Cooper*, 704 F.3d at 782.

### b. Joinder of Watts

Plaintiff alleges his attorney erroneously "advised him to join a third party to the case that harmed the case for more than 2 years now." (Doc. 1 at 11.)  Plaintiff also alleges the Superior Court "should have made the proper ruling and allowed the civil court to handle the division of the property between the true owners of the property, which are 2 individuals who are not married to each other (a civil matter)." (*Id.* at 8.)  Plaintiff alleges the Superior Court "has continued to refuse to un-adjoin [Watts]" and "denied Plaintiff's request to un-adjoin Watts." (*Id.* at 9.)  Plaintiff appears to request as his remedy to change the venue of his state case "to allow this case to be retried again all on its merits as the laws favors and demands." (*See* Doc. 1 at 3, 14.)

On December 12, 2022, Plaintiff argued before the Superior Court that his previous attorney made a mistake in joining Watts to the family law case. (Doc. 1-9 at 7–11.)  The Superior Court ruled that Plaintiff's former attorney's joining Watts to the case was not a mistake because there was not "any other way to resolve the property issue of Lynnetta Watts, absent her being joined to the family law case." (*Id.* at 11.)  The Superior Court denied Plaintiff's request to un-adjoin Watts. (*Id.* at 12.)  On February 10, 2023, Plaintiff appealed the Superior Court's order refusing to un-adjoin Watts, arguing he was "appealing [the Superior Court's] denial to make an appropriate order to un-adjoin [Watts]." (Doc. 1-10 at 2.)  Plaintiff also argued Watts "was only joined due to the bad advise of my former attorney." (*Id.* at 3.)  The Court of Appeal, Fourth Appellate District, Division One, denied Plaintiff's appeal because it was an interlocutory appeal. (Doc. 1-10 at 7.)

To the extent Plaintiff challenges the Superior Court's judgment denying his request to un-adjoin Watts as not appropriate or proper and requests a change of venue to retry the case on the merits, the Court rules such a challenge alleges the Superior Court committed legal error and Plaintiff seeks relief from that state court judgment. (*See* Doc. 1 at 8; Doc.1-

10 at 2.)  *See Kougasian*, 359 F.3d at 1140.  Accordingly, Plaintiff's challenge to the Superior Court's judgment is a forbidden de facto appeal.  In denying Plaintiff's request to un-adjoin Watts, the Superior Court ruled that Plaintiff's counsel did not make a mistake, but rather Watts' joinder was necessary to resolving the property issue due to her ownership interest in the property.  (*See* Doc. 1-9 at 11–12.)  Thus, the Court concludes Plaintiff's claim that his attorney erred in joining Watts was decided by the Superior Court and is inextricably intertwined with the forbidden de facto appeal because it "is a fig leaf for taking aim at the state court's own alleged errors."  *Cooper*, 704 F.3d at 782.

### c.  Watts And Her Attorney's Alleged False and Misleading Information

Plaintiff alleges Watts, through her attorney, committed fraud on the court by giving known false and misleading information to the Superior Court to influence it to make rulings they knew were false and misleading and refused to provide Plaintiff documents proving Watts could buy Plaintiff out of the property.  (Doc. 1 at 10–11.)

With respect to Watts and her attorneys' alleged fraud on the court, Plaintiff does not appear to argue that the Superior Court committed a legal error in a particular state court judgment.  Plaintiff also does not explain what remedy he seeks for Watts and her attorney's alleged fraud on the court.  While the relief Plaintiff seeks for this claim is unclear, it does not appear he is asserting the Superior Court made a legal error.  Accordingly, Plaintiff's claim is not a forbidden de facto appeal of a state court judgment or inextricably intertwined with the same.  *See Kougasian*, 359 F.3d at 1140; *Cooper*, 704 F.3d at 782.

### d.  Community Property Issue

Plaintiff contends the Superior Court refuses to decide whether the real property in the state court proceeding is community property.  (*Id.* at 12–13.)  Plaintiff argues the Superior Court "refuses to grant an order to sell the home and refuses any such orders to partition the amounts each party should receive … but instead continues to just wait[] for a trial that will fail to produce any lawful and legal orders."  (*Id.* at 8.)  He also moves this Court to change the venue of his state court case.  (*Id.* at 13–14.)

16

At the time Plaintiff's motion was filed, Plaintiff had an upcoming trial concerning the characterization of the subject property set for July 27 and 28, 2023.  (Doc. 1-6 at 3.)[9]  While the Superior Court denied Plaintiff's requests to resolve the property issue prior to trial, (Doc. 1 at 8–9), it does not appear a state court judgment was rendered by the time Plaintiff's motion was filed concerning whether the subject property was community property.  Thus, Plaintiff's request to change the venue of his state court case so that such a judgment can be rendered is not a forbidden de facto appeal of a state court judgment and is not barred by the *Rooker-Feldman* doctrine.

### e.  Separation of Powers, Inconsistent Outcomes, and Access to Justice

Plaintiff is incorrect that the *Rooker-Feldman* doctrine violates the separation of powers, leads to inconsistent outcomes, or impairs access to justice.  "[T]he *Rooker–Feldman* doctrine is rooted in the principle of separation of powers.  It rests on two basic propositions of federal jurisdiction.  First, Congress has vested the authority to review state court judgments in the United States Supreme Court alone … Second, Congress has empowered the federal district courts to exercise only original jurisdiction."  *Brown & Root, Inc. v. Breckenridge*, 211 F.3d 194, 198–99 (4th Cir. 2000) (internal citations omitted).  "While the lower federal courts were given certain powers in the [Judiciary Act of 1789], they were not given any power to review directly cases from state courts, and they have not been given such powers since that time. … And it is well settled that Congress has the constitutional authority to define the jurisdiction of the lower federal courts."  *Id.* at 199 (internal quotation marks and citations omitted).  Moreover, "principles of

---

[9] The Court acknowledges that this proceeding occurred after Plaintiff's motion was filed.  Indeed, that subsequent state court judgment is the subject of Plaintiff's recently filed *ex parte* motion for a preliminary injunction.  (*See* Doc. 17.)  However, whether a state court judgment was rendered during the pendency of this action does not affect the *Rooker-Feldman* analysis.  *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005) ("[N]either *Rooker* nor *Feldman* supports the notion that properly invoked concurrent jurisdiction vanishes if a state court reaches judgment on the same or related question while the case remains *sub judice* in a federal court.").

federalism and comity" underlie the *Rooker-Feldman* doctrine. *Bianchi*, 334 F.3d at 902; *see also Doe v. Mann*, 415 F.3d 1038, 1047 (9th Cir. 2005) ("We recognize that the prudential concerns embodied by the *Rooker–Feldman* doctrine are important to our system of limited federal court jurisdiction and federalism."). By preventing direct federal district court review of judgments from state courts, the *Rooker-Feldman* doctrine operates to prevent inconsistent outcomes between state and federal courts. Additionally, Plaintiff's access to justice is not impaired by the *Rooker-Feldman* doctrine because the appropriate remedy for a loss in a lower state court is to appeal to a higher state court, then the California Supreme Court, and then the United State Supreme Court, as needed. *See Noel*, 341 F.3d at 1155.

### B. Federal Rules of Civil Procedure 8 and 9

The Superior Court argues Plaintiff's motion fails to satisfy Rule 8 because it is disorganized, highly repetitive, and "primarily comprised of conclusory allegations." (Doc. 5-1 at 12.) The Superior Court adds the motion is "devoid of any structure or identification of specific causes of action," which places a significant burden on the Superior Court to determine the claims and allegations that it must defend against. (*Id.* at 12–13.) The Superior Court criticizes the motion for failing to reference the exhibits it attaches. (*Id.* at 13.) In response to the Superior Court's arguments, Plaintiff states "[t]he Complaint satisfies Rule 8 of the Federal Rules of Civil Procedure (FRCP). Explain how the Complaint adequately states the facts and provides the necessary information to support each claim for relief, thus meeting the standards required under FRCP 12(b)(6)." (Doc. 9 at 10.) Plaintiff also asserts that his cause of action arises under Rule 9(b) based on fraud or mistake. (Doc. 9 at 1.) The Superior Court responds Plaintiff's motion is not a complaint under Rule 8, and he has not sufficiently alleged fraud under the heightened pleading standard of Rule 9(b). (Doc. 13 at 3.)

To survive a motion to dismiss, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must include "sufficient allegations to put defendants fairly on notice of the

18

claims against them." *McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991). "A *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Hebbe v. Pliler*, 627 F.3d 338, 341–42 (9th Cir. 2010).

Even if the Court construes Plaintiff's motion as a complaint, it is repetitive, contains numerous conclusory allegations, and it is difficult to follow.[10]  But viewed with the less stringent standard applicable to *pro se* complaints and in light of this Court's ruling concerning the application of the *Rooker-Feldman* doctrine, (*see supra* III.A),  the Court understands Plaintiff's remaining claims to be that (1) Jackson committed fraud on the court by providing false testimony during the DVRO proceeding; (2) Plaintiff's attorneys committed fraud on the court by failing to provide the Superior Court with proof of his innocence in the DVRO case; (3) Watts through her attorney committed fraud on the court by giving knowingly false and misleading information to the Superior Court; and (4) the Superior Court refuses to decide whether the subject property is community property.  As remedies for the first and second claim, Plaintiff seeks for this Court to vacate the DVRO. Plaintiff does not specify a remedy for the third claim.  And for the fourth claim, Plaintiff requests this Court change the venue of the state court proceeding to another state court.

### a.  Remaining Claims of Fraud on the Court

To begin, Plaintiff's claims that Jackson, his three attorneys, and Watts through her attorney committed fraud on the court fail to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  Plaintiff's claims that Jackson submitted false testimony to the Superior Court and that his attorneys failed to provide the

---

[10] The Court has no obligation to review Plaintiff's uncited exhibits attached to the motion. (*See* Docs. 1-2 through 1-27.) *See Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1066 (9th Cir. 2009) ("[j]udges are not like pigs, hunting for truffles buried in briefs"), *Poole v. Affordable Companies, LLC*, Case No. SACV 13-1734 UA(JC), 2016 WL 11585403, at *2 (C.D. Cal. July 5, 2016) ("It is not the Court's role or responsibility to sift through plaintiff's multiple exhibits to identify a legal cause of action.").

Superior Court with proof of his innocence in the DVRO case are conclusory.  They are devoid of "non-conclusory factual content" that would allow this Court to reasonably infer a plausible claim entitling Plaintiff to relief.  *Moss*, 572 F.3d at 969.  Similarly, Plaintiff's claim that Watts and her attorney knowingly provided false and misleading information to the Superior Court is conclusory.  At a minimum, Plaintiff provides no factual detail regarding what alleged false information Watts and her attorney provided the Superior Court.  Thus, Plaintiff has failed to plead sufficient facts from which this Court can reasonably infer a plausible claim for relief.

Additionally, this Court liberally interprets these claims as raising cause(s) of action concerning fraud on the court under Rule 60(d)(3).  (*See* Doc. 1.)  However, "[w]hile Rule 60 of the Federal Rules of Civil Procedure can be used to relieve a party from a final judgment, order, or proceeding issued by a United States District Court, it cannot be used to relieve Petitioner of an order, judgment, or proceeding issued by a state court." *Olaoye v. Ryan*, No. CV 19-05231-PHX-SRB (JFM), 2019 WL 11541375, at *2 (D. Ariz. Sept. 26, 2019) (citing *Holder v. Simon*, 384 Fed. App'x 669, 669 (9th Cir. 2010) ("Rule 60(b) does not provide a basis for subject matter jurisdiction over a claim for relief from a state court judgment."); *Northern Highlands I, II, LLC v. Comerica Bank*, 328 Fed. App'x 358, 360 (9th Cir. 2009) (Federal Rule of Civil Procedure 60 "does not apply to challenges to state courts' final judgments.")).  Plaintiff cannot challenge a state court judgment or proceeding through Rule 60.

Moreover, even if the Court construed any of Plaintiff's remaining fraud-on-the-court claims as claims for extrinsic fraud, which is questionable, *see Wood v. McEwen*, 644 F.2d 797, 801 (9th Cir. 1981) (holding allegation of perjury did not raise an issue of extrinsic fraud, but at most intrinsic fraud, where plaintiff fully participated in the proceeding where the alleged perjury occurred), he must allege how such fraud prevented him from having the opportunity to present his claims or defense in court.  *See Green v. Ancora-Citronelle Corp.*, 577 F.2d 1380, 1384 (9th Cir. 1978) ("In order to be considered extrinsic fraud, the alleged fraud must be such that it prevents a party from having an

opportunity to present his claim or defense in court, … or deprives a party of his right to a day in court.") (internal quotation marks and citations omitted).  This Plaintiff has failed to do.

Finally, Plaintiff has failed to meet the heightened pleading requirements of Rule 9(b) for allegations of fraud.  Under Rule 9(b) "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  A pleading satisfies Rule 9(b) if it identifies "the who, what, when, where, and how" of the misconduct charged.  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).  Rule 9(b) also requires that the complaint "set forth an explanation as to why the statement or omission complained of was false or misleading."  *Yourish v. California Amplifier*, 191 F.3d 983, 993 (9th Cir. 1999) (citation and quotation omitted).  "To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong."  *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (internal quotation marks and citations omitted).  "Any averments which do not meet that standard should be 'disregarded,' or 'stripped' from the claim for failure to satisfy Rule 9(b)."  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).

Plaintiff does not explain how Jackson testified falsely at the DVRO proceeding and why her testimony was false or misleading.  *See Yourish*, 191 F.3d at 993; *Vess*, 317 F.3d at 1106.  Nor does Plaintiff explain how his three attorneys failed to provide the Superior Court with proof of his innocence, what that proof is, when his attorneys failed to provide it, and how their omission was false or misleading.  Lastly, Plaintiff fails to explain what false and misleading information Watts through her attorney provided to the Superior Court, when they did so, how they did so, and why the information they provided was false or misleading.  But even if Plaintiff had alleged such facts, he also fails to explain why such facts raise a cause of action against *the Superior Court*.  Thus, Plaintiff fails to plausibly state a claim upon which relief can be granted for his claims arising out of the

Superior Court's DVRO judgment.

### b. Community Property Issue

Plaintiff's claim that the Superior Court refuses to decide the community property issue and request for this Court to transfer the state court proceeding to another state court fails. Plaintiff pleads that the reason the Superior Court refuses to decide this issue is because it is the subject of an upcoming trial. (Doc. 1 at 8.) However, Plaintiff alleges such a trial "is bound to fail because [the Superior Court] refused to make any such orders for a professional to partition the divisions of the property and [the Superior Court] continues to allow an unrelated third party to remain in the divorce case." (*Id.*)

Nowhere in the motion does Plaintiff explain what cause of action he is asserting for this claim. *See Williford v. Hall*, No. Case No. 1:15-cv-00868-KJM-JLT, 2015 WL 13684063, at *3 (E.D. Cal. June 22, 2015) (granting motion to dismiss in part where plaintiff "fail[ed] to identify any causes of action in his complaint, and the facts alleged [were] too sparse for the Court to determine the claim(s) upon which Plaintiff [sought] to proceed."); *Carney v. Kaufman*, No. 2:14-cv-00565-RFB-GWF, 2015 WL 995160, at *4 (D. Nev. Mar. 6, 2015) ("Carney has failed to identify any cause of action or plead facts to support any cognizable claim, and Kaufman and this Court may only guess at what claims Carney is attempting to plead."); *Alvarez v. Lake Cnty. Bd. of Sup'rs*, No. CV 10-1071 NJV, 2010 WL 3619558, at *13 (N.D. Cal. Sept. 13, 2010) ("Even when liberally interpreting the pleadings given Plaintiffs' pro se status, the Court cannot discern a valid cause of action from Plaintiffs' allegations."). And even if this Court were to construe this claim as alleging fraud on the court under Rule 60(d)(3) or extrinsic fraud, it fails for the reasons discussed above.

Thus, Plaintiff's motion fails to plausibly state any claim entitling him to relief.

### C. Eleventh Amendment Immunity

Even if Plaintiff had adequately pled a claim for relief against the Superior Court, Eleventh Amendment immunity bars his suit against the Superior Court. The Superior Court argues that Eleventh Amendment immunity bars Plaintiff's action because California

Superior Courts are arms of the state entitled to such immunity for suits for damages, injunctive relief, and declaratory relief. (Doc. 5-1 at 16–17.)[11] Plaintiff concedes this claim "may hold some truth," yet he argues he is not suing the Superior Court for monetary damages, but to set aside the DVRO and transfer the case to another jurisdiction. (Doc. 9 at 3.) Plaintiff argues Eleventh Amendment immunity does not bar claims against the state concerning interstate commerce or the violations of federal constitutional rights. (*Id.* at 8–9.) The Superior Court responds Plaintiff has articulated no basis for application of any exception to Eleventh Amendment immunity nor has he identified any activities constituting waiver. (Doc. 13 at 6.) The Superior Court adds that Plaintiff erroneously argues such activities could include interstate commerce. (*Id.* at 7.)

"[A] suit against the Superior Court [of California] is a suit against the State, barred by the eleventh amendment." *Greater Los Angeles Council on Deafness, Inc. v. Zolin*, 812 F.2d 1103, 1110 (9th Cir. 1987), *superseded by statute on other grounds as stated in Buffin v. California*, 23 F.4th 951 (9th Cir. 2022) (citing *Shaw v. Cal. Dep't of Alcoholic Beverage Control*, 788 F.2d 600, 603 (9th Cir. 1986)); *see also Munoz v. Superior Ct. of Los Angeles Cnty.*, No. 22-55941, 2024 WL 89380, at *2 (9th Cir. Jan. 9, 2024) ("[T]he Superior Court of the State of California has sovereign immunity as an arm of the state."). Such immunity extends to suits for damages, injunctive relief, and declaratory relief. *See id.* n.10.

Plaintiff's lawsuit against the Superior Court is barred by Eleventh Amendment immunity. The fact that Plaintiff does not seek monetary relief does not alter that result. *See Zolin*, F.2d at 1110 n.10. Plaintiff has cited no support for his claim that Eleventh Amendment immunity is waived when the state engages in interstate commerce, nor has he alleged the state engaged in interstate commerce here. *See Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 691 (1999) ("[T]he sovereign immunity of the State of Florida was neither validly abrogated by the Trademark Remedy

---

[11] Defendant also argues that judges and court employees are similarly arms of the state entitled to such immunity. (*Id.*)

Clarification Act, nor voluntarily waived by the State's activities in interstate commerce[.]"); *Hines v. Cal. Pub. Utils. Comm'n*, No. C-10-2813 EMC, 2010 WL 4691652, at *4 (N.D. Cal. Nov. 8, 2010) ("The mere reference to interstate commerce is insufficient to constitute an explicit waiver of Eleventh Amendment immunity."). Nor has Plaintiff alleged that the Superior Court violated his federal constitutional rights. In any event, Plaintiff has failed to articulate any basis for waiver of Eleventh Amendment immunity. *See Micomonaco v. State of Wash.*, 45 F.3d 316, 319 (9th Cir. 1995) ("Waiver of Eleventh Amendment immunity by a state will be found only where stated by the most express language or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction.") (internal quotation marks and citations omitted). In light of the Court's ruling, it need not reach the Parties' remaining arguments.

### D. Leave to Amend

Federal Rule of Civil Procedure 15(a)(2) states that courts "should freely give leave when justice so requires." "A district court should not dismiss a *pro se* complaint without leave to amend unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'" *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (quoting *Schucker v. Rockwood*, 846 F.2d 1202, 1203–04 (9th Cir. 1988) (per curiam)).

"[A] district court need not grant leave to amend where the amendment (1) prejudices the other party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006) (citations omitted). "[A] proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim." *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988) (citations omitted). Here, the Court finds that further amendment would be futile. Even if Plaintiff had sufficiently pled a claim for external fraud on the Superior Court in his motion, his claims against the Superior Court would be barred by Eleventh Amendment immunity. *See Bliss v. Alaska*, Case No. 3:19-cv-00236-SLG, 2019 WL 6736204, at *4 (D. Alaska Dec. 11, 2019) (granting motion to dismiss without leave to amend where civil rights action

24

against judges, court-appointed guardian ad litem, and State of Alaska either did not meet state actor requirement or the defendants were immune from suit).  Thus, the Court declines to grant leave to amend.

## IV.   CONCLUSION

For the foregoing reasons, the Superior Court's Motion is **GRANTED WITH PREJUDICE**.  (Doc. 5.)

**IT IS SO ORDERED.**

DATE:  January 18, 2024

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE